UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VINTAGE BAY CONDOMINIUM
ASSOCIATION, INC.,

    Plaintiff,

v.                     Case No: 2:18-cv-729-FtM-99CM

LEXINGTON INSURANCE COMPANY,

    Defendant.
_____

**OPINION AND ORDER**

This matter comes before the Court on plaintiff's Motion to Compel Appraisal (Doc. #10) filed on November 13, 2018. Defendant filed a Response in Opposition (Doc. #11), and a Reply (Doc. #20) and Surreply (Doc. #25) were filed. For the reasons set forth below, the Motion is denied without prejudice.

**I.**

Plaintiff Vintage Bay Condominium Association, Inc. ("Vintage Bay" or "Insured") originally filed this action on September 26, 2018 in state court. (Doc. #23, "Petition to Compel Appraisal"). Defendant Lexington Insurance Company removed the case on October 31, 2018 (Doc. #1) and filed an Answer (Doc. #6) on November 7, 2018. Insured alleges two counts – Count I for "Petition to Enforce and Compel Appraisal" and Count II for breach of contract with respect to a commercial insurance policy, Policy No. 41-LX-067045446-2, issued by Lexington to cover a condominium complex in

Marco Island, Florida (the "Property"). Plaintiff filed a Motion to Compel Appraisal (Doc. #10) in state court nearly contemporaneous with filing the lawsuit. Plaintiff alleges that the parties disagree about the amount of a covered loss, which is appropriate for appraisal.

**A. The Loss**

On or about September 10, 2017, plaintiff discovered damage due to Hurricane Irma at the Property, which was insured by Lexington, and plaintiff submitted a claim to Lexington for property damage. (Doc. #23, ¶¶ 5.) Lexington opened coverage for the loss and issued an undisputed payment to repair damage, but has failed to pay for incurred costs or otherwise dispute the amount of loss per the repair estimates plaintiff submitted. (Id., ¶ 7.) By failing to pay the benefits for a covered cause of loss, plaintiff claims defendant breached the Policy, causing damages.

**B. Events Leading to Invocation of Appraisal**

Plaintiff details the events leading up to its written demand in the Affidavit of Scott G. Millard, its counsel. (Doc. #21-1.) The Affidavit reflects that the Lexington inspected the Property many times, Vintage Bay made additional demands for payment in May 2018, and the parties exchanged estimates of the amount of damage until June 2018. (Doc. #21-1, ¶¶ 31-37.) In June 2018, plaintiff sent Lexington two demands for payment, to which it received no

response. (Id., ¶¶ 27-29.) Thereafter, on August 24, 2018, plaintiff sent a written demand invoking its right to appraisal to resolve the dispute as to the amount of loss after allowing several inspections of the property and submitting sworn proofs of loss. (Doc. #21-1, ¶ 41.) The invocation provided a 20-day deadline for appointment of defendant's appraiser. (Id.) Believing that it had received no response from defendant, Vintage Bay filed this lawsuit on September 26, 2018.

Because it was unclear to Lexington what additional amounts plaintiff was seeking, its counsel emailed plaintiff's counsel on September 13, 2018 (the 19th day of plaintiff's 20-day deadline), invoking certain policy obligations and requesting the Insured's examination under oath (EUO), various documents, and a sworn statement in proof of loss. (Doc. #11-2.) The EUO was scheduled for November 8, 2018. Plaintiff counsel missed this email, but opposing counsel alerted him to it on November 7, 2018 – one day before the examination was to take place. (Doc. #11-4; Doc. #21-1, ¶ 45-46.) The EUO has not taken place, nor have the requested documents been produced (Doc. #11-3, ¶ 10), but plaintiff did submit a third post-suit proof of loss to Lexington on November 30, 2018 for over $7 million. (Doc. #21-1, ¶ 50; Doc. #20-4.) Lexington argues that the latest proof of loss is unsupported and fails to provide defendant with enough information to determine

its obligations under the Policy and if the requisite "disagreement" as to the amount of loss exists to invoke appraisal.

### C. Applicable Policy Language

Plaintiff responds that it is entitled to appraisal because it is invoking its right to appraisal listed under the "Appraisal" clause of the Policy, and under Florida law[1] an appraiser may determine the value of the loss so the parties can then allow the Court to resolve the coverage issues. The Policy's appraisal clause states:

**2. Appraisal**

> If we and you disagree on the value of the property or the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.
>
> Each party will:
>
> **a.** Pay its chosen appraiser;
>
> **b.** Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

---

[1] In this diversity case, the Court applies Florida substantive law.

(Doc. #20-1, p. 44.) The Policy also contains a provision governing the Duties in the Event of Loss or Damage which expressly provides, in relevant part:

**E. Loss Conditions**

* * *

**3. Duties in the Event of Loss or Damage**

  **a.** You must see that the following are done in the event of loss or damage to Covered Property:

* * *

    **(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

    **(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

    Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

    **(7)** Send us a signed, sworn proof of loss containing the information we requested to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

* * *

  **b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

(Id., pp. 44-45.)

Lexington invoked this "Loss Conditions" provision in its

September 13, 2018 letter to plaintiff and argues in part that plaintiff's failure to comply with the post-loss conditions prevents it from compelling appraisal and appraisal is premature until such obligations are complied with. Plaintiff responds that appraisal is ripe because when appraisal was invoked there was a clear dispute as to the value of the amount of loss.

**II.**

Under Florida law, a dispute regarding a policy's coverage for a loss is exclusively a judicial question. Gonzalez v. Am. Sec. Ins. Co., No: 8:15-cv-1515-36EAJ, 2015 WL 12852303, at *4 (M.D. Fla. Nov. 10, 2015) (citations omitted). But when an insurer acknowledges that there is a covered loss, any dispute regarding the amount of the loss is appropriate for appraisal. Id. (citations omitted); Freeman v. American Integrity Ins. Co. of Florida, 180 So. 3d 1203, 1208 (Fla. 1st DCA 2015). An insured's compliance with the post-loss obligations mandated in the policy raises a question of liability, not the value or amount of the loss. See State Farm Fire & Cas. Co. v. Licea, 685 So.2d 1285, 1288 (Fla. 1996) (holding that even when an insurer has admitted partial coverage of the claim and submits to appraisal, it can still contest the claim if "there has been a violation of the usual policy conditions such as fraud, lack of notice, and failure to cooperate").

Here, plaintiff does not dispute that it did not comply with

certain post-loss obligations, such as submitting to an EUO.  The question then is whether plaintiff's demand for appraisal is ripe although it has not complied with such obligations.  The Court finds that it is not ripe.  Florida courts have consistently held that a party seeking appraisal must comply with a contract's post-loss obligations before the right to appraisal can be invoked under the contract.

> The discretion to determine the order in which coverage and loss issues are considered does not, however, override a preliminary determination as to whether an arbitrable issue exists. Before arbitration (or appraisal) under an insurance policy such as the one at issue here may be compelled, a disagreement, or "arbitrable issue," must be demonstrated to exist. U.S. Fid. & Guar. Co. v. Romay, 744 So. 2d 467, 469 (Fla. 3d DCA 1999). No disagreement or arbitrable issue exists unless "some meaningful exchange of information sufficient for each party to arrive at a conclusion" has taken place. Id. at 470. *Thus, an "insured must comply with all of the policy's post-loss obligations before the appraisal clause is triggered."* Id. at 471; see First Home Ins. Co. v. Fleurimond, 36 So. 3d 172, 174 (Fla. 3d DCA 2010).

State Farm Florida Ins. Co. v. Hernandez, 172 So. 3d 473, 476 (Fla. 3d DCA 2015) (emphasis in original) (quoting Citizens Property Insurance Corp. v. Mango Hill Condominium Ass'n 12 Inc., 54 So. 3d 578, 581 (Fla. 3d DCA 2011)).  "The law in this district is clear and has been for nearly twenty years: the party seeking appraisal *must comply with all post-loss obligations* before the right to appraisal can be invoked under the contract."  Id. at 476-77 (emphasis in original).  See also Galindo v. ARI Mut. Ins. Co.,

203 F.3d 771 (11th Cir. 2000) (claims made 5 years after original claim was settled and invoking the appraisal process require compliance with post-loss terms of policy before becoming subject to appraisal process). In so holding, the court in Galindo recognized that permitting an insured to compel appraisal without first complying with the policy's post-loss obligations would place the insurer at a considerable disadvantage entering the appraisal process as the post-loss obligations provide the insurer with a means to determine the amount of loss. Id. at n. 8 (citing Romay, 744 So. 2d at 471 n. 4). See also Citizens Property Ins. Corp. v. Galleria Villas Condo. Assoc., 48 So. 3d 133, 191-92 (Fla. 3d DCA 2010) (concluding that until a policy's post-loss conditions are met, there was no disagreement as to the amount of loss to be appraised).

Here, because at least some post-loss obligations remain unsatisfied the Court denies the request to compel appraisal at this time. Lexington has not yet determined whether it disputes (and to what extent it might dispute) plaintiff's most recent post-litigation proof of loss submitted on November 30, 2018, and Lexington has requested more information from plaintiff in this regard, as allowed by Policy provisions. Until this process is complete, the request for appraisal is not yet ripe. The Court will therefore deny the request for appraisal without prejudice to be re-filed, if necessary.

As for Vintage Bay's argument that Lexington somehow waived its proof-of-loss defense by failing to timely respond to its request for appraisal, such an argument fails. There was no requirement in the Policy that Lexington respond within 20 days and in any event, Lexington responded on the 19th day with its request for an EUO and other documents.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Plaintiff's Motion to Compel Appraisal (Doc. #10) is **DENIED without prejudice.**

**DONE and ORDERED** at Fort Myers, Florida, this __16th__ day of January, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record